**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

**Nos. 03-4643/04-3168**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| RAUL TORO and URSO J. CASTILLO- | ) | NORTHERN DISTRICT OF OHIO |
| MEJIA, | ) | |
| | ) | |
| Defendants-Appellants. | ) | |

Before: COLE and SUTTON, Circuit Judges; BARZILAY, Judge.[*]

SUTTON, Circuit Judge. On June 17, 2003, a federal grand jury charged Raul Toro, Urso J. Castillo-Mejia and 17 other individuals with conspiracy to possess with the intent to distribute more than 1,000 grams of heroin in violation of 21 U.S.C. § 841(a)(1), § 841(b)(1)(A) and § 846. Toro pleaded guilty, and the district court sentenced him to 135 months of imprisonment. Castillo-Mejia opted for trial, a jury convicted him and the district court sentenced him to 121 months of imprisonment.

Toro and Castillo-Mejia raise distinct claims on appeal. Toro argues (1) that he should be resentenced in the aftermath of *United States v. Booker*, 125 S. Ct. 738 (2005), and (2) that his

---

[*] The Honorable Judith M. Barzilay, Judge for the United States Court of International Trade, sitting by designation.

counsel provided ineffective assistance by failing to object to the disparity between his sentence and the sentences of his co-defendants. Castillo-Mejia asks for a new trial, claiming that the district court improperly admitted (1) the hearsay statements of co-conspirators under Rule 801(d)(2)(E) of the Federal Rules of Evidence and (2) "other crimes" evidence in violation of Rule 404(b). With the exception of granting Toro's request to be resentenced in accordance with *Booker*, we reject the appellants' arguments.

I.

On June 17, 2003, a federal grand jury in the Northern District of Ohio returned a superseding indictment charging Toro, Castillo-Mejia and 17 other co-defendants with conspiracy to possess with the intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1), § 841(b)(1)(A) and § 846. The grand jury also charged Toro with two counts of violating 18 U.S.C. § 1952 for transporting heroin (in interstate commerce) in aid of an illegal enterprise.

Toro pleaded guilty to the conspiracy count, and the government dismissed the two remaining counts in return. In the plea agreement, Toro stipulated that he was responsible for at least 3 kilograms but less than 10 kilograms of heroin, resulting in a base offense level of 34. JA 118. Toro, a citizen of Colombia, also agreed not to contest his deportation after the completion of his prison sentence, in exchange for the government's recommendation of a two-level downward departure under U.S.S.G. § 5K2.0.

Starting with a base offense level of 34, the presentence report recommended that the district court add a two-level enhancement if it determined that Toro possessed a firearm in connection with the offense, *see* U.S.S.G. § 2D1.1(b)(1), and recommended a three-level enhancement for Toro's role as a manager or supervisor in the offense, *see* U.S.S.G. § 3B1.1(b). It also recommended a three-level reduction for Toro's acceptance of responsibility, *see* U.S.S.G. § 3E1.1. A mandatory minimum sentence of 120 months applies to Toro's offense. *See* 21 U.S.C. § 841(a)(1), § 841(b)(1)(A).

At Toro's sentencing hearing on December 2, 2003, Toro's counsel objected to the firearm and role-in-the-offense enhancements. The district court agreed that the firearm enhancement did not apply but that the three-level enhancement for Toro's role in the offense did. The court also found, at the urging of Toro's counsel, that Toro's deportation concession warranted a two-level reduction and that Toro's acceptance of responsibility warranted a three-level reduction. After accounting for these adjustments, the district court calculated an offense level of 32, which when coupled with a Criminal History Category of I created a Guideline range of 121 to 151 months of imprisonment. The district court sentenced Toro to 135 months in prison and ordered him to surrender to immigration authorities for deportation upon his release. From the record, it appears that the sentences of the conspirators ranged from 32 months to 135 months, Toro being the only defendant to receive 135 months.

Castillo-Mejia pleaded not guilty and went to trial on the conspiracy charge on September 15, 2003. The trial proceedings included the testimony of co-defendants John Calderone, Juan

Carlos Gonzales-Perez, Danny Hill and Bruce Wright as well as the testimony of government agents Warner Irizarry (FBI), Lee Lucas (DEA) and Stephen Vogt (FBI). Over defense counsel's objection, the district court admitted several hearsay statements of Castillo-Mejia's co-conspirators under Rule 801(d)(2)(E) of the Federal Rules of Evidence. Also, over defense counsel's objection, the court admitted testimony regarding Castillo-Mejia's dealings with one of his co-defendants prior to the beginning of the conspiracy (late fall of 2000) under Rule 404(b) of the Federal Rules of Evidence. On September 19, 2003, a jury convicted Castillo-Mejia on the conspiracy charge and found that he conspired to possess with the intent to distribute one kilogram or more of heroin. On December 22, 2003, the district court sentenced Castillo-Mejia to 121 months of imprisonment. Castillo-Mejia's offense also carries a mandatory minimum of 120 months. *See* 21 U.S.C. § 841(a)(1), § 841(b)(1)(A).

## II.

### A.

We consider Toro's *Booker* claim first. Because he did not raise a Sixth Amendment challenge below, we may remand his sentence only if he shows plain error. *See United States v. Olano*, 507 U.S. 725, 731 (1993); *see also* Fed. R. Crim. P. 52(b). To satisfy this standard, the defendant must show an "(1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affect[ed] the fairness, integrity, or public reputation of judicial

proceedings." *Johnson v. United States*, 520 U.S. 461, 466–67 (1997) (quotations and citation omitted).

In the aftermath of our decision in *United States v. Oliver*, 397 F.3d 369 (6th Cir. 2005), there can be little doubt that Toro has met this standard. Indeed, while the government continues to disagree with *Oliver*, it concedes that the decision controls this case: "Assuming *Oliver* remains the law of the Circuit, the district court's resort to judicial fact-finding to increase the defendant's base level, though correct at the time, now amounts to plain error[] and requires a remand to the district court for resentencing." Gov't Supp. Br. at 2. Accordingly, we vacate Toro's sentence and remand the case to the district court for the limited purpose of resentencing him under *Booker*.

B.

Toro next argues that his attorney provided ineffective assistance of counsel by failing to object to the length of his sentence in comparison to the shorter sentences of his co-defendants. As we have said on many occasions, however, it is not our practice to entertain claims of ineffective assistance of counsel on direct appeal. *See United States v. Bradley*, 400 F.3d 459, 462 (6th Cir. 2005). While there may be "rare exceptions where 'the record is adequate to assess the merits of the defendant's allegations,'" *id.* (quoting *United States v. Wunder*, 919 F.2d 34, 37 (6th Cir. 1990)), it is "customary procedure" for a defendant to raise ineffective-assistance claims in post-conviction proceedings under 28 U.S.C. § 2255, *United States v. Hill*, 30 F.3d 48, 51 (6th Cir. 1994). Because the "evidence introduced at trial . . . will be devoted to issues of guilt or innocence, [ ] the resulting

record [on direct appeal] in many cases will not disclose the facts necessary to decide" an ineffective-assistance claim. *Massaro v. United States*, 538 U.S. 500, 505 (2003); *see id.* at 504 ("[A] motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective-assistance.")

Toro offers no good reason for departing from this practice. To the contrary, his ineffective-assistance claim accentuates the necessity of this custom. While he contends that his counsel should have made an argument regarding the comparatively short sentences of his co-defendants, the record contains no information why his co-defendants received shorter sentences. On this record, in other words, it is quite possible that the co-defendants made different plea agreements with the government, offered substantial assistance to the government (which Toro may not have offered), stipulated to different facts in their plea agreements or qualified for reductions or downward departures for which Toro was not eligible. Nor does the record explain why defense counsel raised some objections during Toro's sentencing—and did so successfully—and did not raise others. For all we know, defense counsel had a sound reason for not making the argument that Toro now claims he should have made. Under these circumstances, if Toro still wishes to bring an ineffective-assistance claim after his resentencing, he must do so by filing a § 2255 motion.

C.

Castillo-Mejia first argues that the district erred in admitting the hearsay statements of co-conspirators under Rule 801(d)(2)(E) of the Federal Rules of Evidence. We review a district court's

factual findings under the clearly erroneous standard and its legal conclusions de novo. *United States v. Gessa*, 971 F.2d 1257, 1260–61 (6th Cir. 1992).

A district court may admit hearsay statements of co-conspirators where "the government [ ] establish[es] by a preponderance of the evidence that (1) the conspiracy existed, (2) the defendant was a member of the conspiracy, and (3) the co-conspirator's statements were made in furtherance of the conspiracy." *United States v. Emuegbunam*, 268 F.3d 377, 395 (6th Cir. 2001); *see* Fed. R. Evid. 801(d)(2)(E)*.* While the district court may consider the contents of the statement in making this inquiry, the hearsay statement by itself may not prove the existence of the conspiracy and the defendant's participation in it. *See id.*; *see also Bourjaily v. United States*, 483 U.S. 171, 180–81 (1987).

We disagree with Castillo-Mejia's contention that the government did not meet its burden in seeking the admission of this evidence. The co-conspirators offered direct testimony about Castillo-Mejia's acts and the acts of the other conspirators that were done to further the conspiracy. Gonzales-Perez testified that Castillo-Mejia was an "associate" of Luis Ortiz, who (he also testified) was in the business of selling heroin. Gonzales-Perez described two meetings in which Castillo-Mejia was present with other members of the conspiracy, one of which ended in Castillo-Mejia giving his car to Ortiz in payment for a heroin debt.

Calderone testified that he traveled to Cleveland from Queens, New York in November of 2000 at Castillo-Mejia's request and delivered 800 grams of heroin to him. Calderone testified that

Castillo-Mejia paid him $2,400 for making the delivery and paid for his taxi once he arrived in the Cleveland area. He also testified that Castillo-Mejia introduced him to a man named Balager, the source of the heroin in New York. Calderone testified that after he delivered the heroin to Castillo-Mejia, he saw Castillo-Mejia give some of it to an African-American male and that he traveled with Castillo-Mejia to meet with Bruce Wright and a man named Vince, both of whom are named in the conspiracy and both of whom Castillo-Mejia described to Calderone as his heroin "clients." JA 354–56. Calderone testified that he made a second trip to deliver heroin from Balager in New York to Castillo-Mejia in Ohio. This time, he testified, he transported 600 grams of heroin and Castillo-Mejia paid him $1,800. Calderone testified that during this trip he stayed at Castillo-Mejia's apartment for several days and met with several individuals named in the conspiracy.

Wright testified that in 1995 he "ran into an individual by the name of Manny" who was in the cocaine and heroin business. He testified that, through Manny, he became involved in the purchase and distribution of heroin and shortly thereafter met Manny's partner, Castillo-Mejia. Wright testified that Manny was arrested at some point in 1995 and that Castillo-Mejia took over the business, eventually making Ortiz and Calderone his partners. Wright testified that he and Castillo-Mejia would meet at a Corvette shop and that Castillo-Mejia would give him anywhere from 100 to 200 grams of heroin, which he would distribute to his "customers," many of whom were also named in the conspiracy. JA 437. Wright also testified that Castillo-Mejia used his nephew Phil Wright numerous times to pick up heroin from New York and deliver it to him in Ohio. And, finally, Wright testified that he was involved in three other heroin transactions with Castillo-Mejia:

in August 2002, he obtained 56 grams from him; in December 2002, he obtained 100 grams from him; and in January 2003, he obtained an unspecified amount from him.

Leaving aside the hearsay statements themselves, the testimony showed the following: (1) a witness who claims that Castillo-Mejia paid him to transport heroin from New York and deliver it to him in Cleveland on at least two occasions; (2) a witness who testified that Castillo-Mejia supplied him with heroin continually for several years ending in late 2000 and three additional times in 2002 and 2003; and (3) three witnesses who place him at meetings with, or having a connection to, other members of the conspiracy. Nor did the district court, who had a ring-side view of these proceedings, commit clear error in crediting the consistent testimony of these witnesses. *See Emuegbunam*, 268 F.3d at 395. On this record, there can be little doubt that a preponderance of the evidence showed that a conspiracy existed and that Castillo-Mejia was a member of it. The out-of-court statements of Castillo-Mejia's co-conspirators were properly admitted.

D.

Castillo-Mejia next argues that the district court erred in admitting Wright's testimony about his heroin dealings with Castillo-Mejia prior to the dates charged in the conspiracy. He argues that the evidence violates Rule 404(b) of the Federal Rules of Evidence because it consists of "other crimes, wrongs, or acts" that were separate from the charged conduct. Fed. R. Evid. 404(b). The district court admitted this testimony as "background evidence" and, in the alternative, considered it properly admissible under Rule 404(b). JA 430.

"Background evidence" is admissible when it constitutes "a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense." *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000). Proper background evidence consists of "acts that are inextricably intertwined with the charged offense," and its introduction "does not implicate Rule 404(b)." *Id.* In our view, Wright's testimony about his dealings with Castillo-Mejia prior to the fall of 2000 were properly admitted as background evidence. Wright testified that he began receiving heroin from Castillo-Mejia shortly after they met in 1995 and that the relationship continued into the early months of the conspiracy. He also testified that, after a year or so, Castillo-Mejia resurfaced as one of his suppliers and that he engaged in three heroin transactions with Castillo-Mejia in 2002 and 2003. The limited testimony regarding transactions between Wright and Castillo-Mejia prior to the beginning of the conspiracy was necessary to show how Wright came to be acquainted with Castillo-Mejia and how their heroin-dealing relationship began. The testimony served as a "prelude to the charged offense" and is "inextricably intertwined with the charged offense." *Id.*

In response, Castillo-Mejia claims that Wright's testimony regarding events prior to the fall of 2000 involved "circumstances [that] were completely different" from the charged offense. Castillo-Mejia Br. at 19. Yet Castillo-Mejia presents no support for that conclusory statement, the testimony presented *did* provide a background to the relationship between the parties and nothing in the record otherwise supports Castillo-Mejia's contrary argument. As this testimony was properly

admitted as background evidence, we need not consider its admissibility under Rule 404(b).

Castillo-Mejia's conviction is affirmed.

III.

For these reasons, we affirm the judgment of the district court in all respects save one:

Toro's sentence is vacated, and we remand his case to the district court for the limited purpose of

resentencing him under *Booker*.