RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 14a0066p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee*,

v.

HARRY ALLEN PRITCHETT (11-6489), JESSIE
H. JOHNSON (11-6490), EDDIE ROLLINS (11-
6491), and MIKE COFFELT (11-6495),
                    *Plaintiffs-Appellants*.

> Nos. 11-6489/ 6490/ 6491/
> 6495

Appeal from the United States District Court
for the Eastern District of Tennessee of Chattanooga.
No. 1:09-cr-181—Curtis L. Collier, District Judge.

Argued: November 20, 2013

Decided and Filed:  April 9, 2014

Before:  BATCHELDER, Chief Judge; GRIFFIN, Circuit Judge; BELL, District Judge[*]

_____

### COUNSEL

**ARGUED:** James Woolard, MILLER CANFIELD, Detroit, Michigan, for Appellant in
11-6495.  Scott A. Winne, UNITED STATES ATTORNEY'S OFFICE, Chattanooga,
Tennessee, for Appellee. **ON BRIEF:** James Woolard, UNIVERSITY OF MICHIGAN
LAW SCHOOL FEDERAL APPELLATE LITIGATION CLINIC, Ann Arbor,
Michigan, Melissa M. Salina, OFFICE OF THE FEDERAL PUBLIC DEFENDER,
Toledo, Ohio, Dennis G. Terez, OFFICE OF THE FEDERAL PUBLIC DEFENDER,
Cleveland, Ohio, for Appellant in 11-6495.  Michael J. Stengel, Memphis, Tennessee,
for Appellant in 11-6489.  Charles P. Dupree, Chattanooga, Tennessee, for Appellant in
11-6490.  T. Clifton Harviel, Memphis, Tennessee, for Appellant in 11-6491.  Scott A.
Winne, UNITED STATES ATTORNEY'S OFFICE, Chattanooga, Tennessee, for
Appellee.

---

[*]The Honorable Robert Holmes Bell, United States District Judge for the Western District of
Michigan, sitting by designation.

————————————

## OPINION

————————————

BELL, District Judge.    Four defendants who were convicted of a methamphetamine conspiracy have raised multiple challenges to their convictions and sentences.  For the reasons that follow, we affirm.

## I.  BACKGROUND

In January 2007, members of the Marion County sheriff's department found a number of individuals in possession of "ice" methamphetamine during traffic stops.  An investigation was initiated which included controlled purchases of methamphetamine by a confidential informant.  The investigation led to a series of indictments charging 39 individuals with a methamphetamine conspiracy and associated drug and firearms offenses.

Four defendants, Appellants Harry Pritchett, Jessie Johnson, Eddie Rollins and Mike Coffelt, went to trial.  After a fourteen-day jury trial, all four were found guilty of conspiracy to manufacture and distribute methamphetamine (Count 1) and conspiracy to possess a listed chemical – pseudoephedrine and iodine – with knowledge that the chemical would be used to manufacture methamphetamine (Count 2).  Pritchett, Rollins and Coffelt were additionally found guilty of associated offenses.[1]  With respect to Pritchett and Coffelt, the jury found that the conspiracy charged in Count 1 involved 50 grams or more of methamphetamine (actual) or 500 grams or more of a mixture containing methamphetamine.  With respect to Rollins and Johnson, the jury found that

————————————

[1]Pritchett was additionally found guilty of manufacturing methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), possessing firearms as a convicted felon in violation of 18 U.S.C. § 922(g)(1), possessing methamphetamine laboratory equipment and chemicals in violation of 21 U.S.C. § 843(a)(6), and using and maintaining drug premises, in violation of 21 U.S.C. § 856(a)(1). (Counts 3, 4, 5, 6, 7, 8, and 10).  Rollins was additionally found guilty of manufacturing methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and possessing methamphetamine laboratory chemicals and equipment in violation of 21 U.S.C. § 843(a)(6) (Counts 11 and 12 ).  Coffelt was additionally found guilty of manufacturing methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), possessing methamphetamine laboratory equipment and chemicals in violation of 21 U.S.C. § 843(a)(6), using and maintaining drug premises in violation of 21 U.S.C. § 856(a)(1), and possessing firearms as an unlawful user of a controlled substance in violation of 18 U.S.C. § 922(g)(3).

the conspiracy involved 5 grams of methamphetamine (actual) or 50 grams of a mixture containing methamphetamine.  Pritchett was sentenced to 240 months in prison; Rollins was sentenced to 360 months in prison; Johnson was sentenced to 97 months in prison; and Coffelt was sentenced to 240 months in prison.

## II.  DISCUSSION

### A.  Prior Drug Conviction

Coffelt appeals the trial court's enhancement of his sentence pursuant to 21 U.S.C. § 841(b)(1)(A) for a drug conviction from 2006.  The sentence enhancement was based on Coffelt's March 2006 guilty plea to one count of felony possession of methamphetamine.  He received a four-year term of probation under Tennessee's judicial diversion statute, Tenn. Code Ann. § 40-35-313.  Although Coffelt acknowledges that he pled guilty in 2006 to a drug offense, Coffelt successfully completed his term of probation on March 15, 2010, and an Order of Expungement and Dismissal was entered on August 18, 2010.  Coffelt contends that his plea should not have been used to enhance his sentence because it was entered pursuant to the Tennessee judicial diversion statute, which provides that upon successful completion of probation, the charges are dismissed and the defendant is discharged without adjudication of guilt, and specifically provides that the discharge is not a conviction.  Tenn. Code Ann. § 40-35-313(a)(2).

The issue for our consideration is whether a plea that was dismissed and expunged under a state judicial diversion program, with no adjudication of guilt and no entry of judgment, is a qualifying conviction for purposes of a sentence enhancement under 21 U.S.C. § 841(b)(1)(A).  "This court reviews de novo the legal conclusion that a prior conviction is a qualifying offense under 21 U.S.C. § 841(b)(1)(A)."  *United States v. Corona*, 493 F. App'x 645, 653 (6th Cir. 2012), *cert. denied*, 133 S. Ct. 1268 (2013) (citing *United States v. McGrattan*, 504 F.3d 608, 610 (6th Cir. 2007)).

The trial court determined that it was bound by Sixth Circuit precedent, specifically *United States v. Miller*, 434 F.3d 820 (6th Cir. 2006), to find that Coffelt had

a qualifying prior drug conviction.  (Dkt. No. 1484, Sent. Tr. at 33-35.)  In *Miller* we observed that "alternative sentencing such as that utilized by Georgia in its first-offender provision does not prevent the underlying offense from being treated as a prior conviction for purposes of federal sentencing statutes." *Id*. at 824.  *See also United States v. Graham*, 622 F.3d 445, 460 n.15 (6th Cir. 2010) (noting that this circuit has "rejected the argument that a first-offender status adjudication resulting in a sentence of probation is not a 'prior conviction for a felony drug offense [that] has become final' for § 841 purposes" (citing *Miller*, 434 F.3d at 824)).  Although *Miller* appears to suggest that we have determined that a deferred adjudication is a "prior conviction" under § 841, the issue of whether the plea under the Georgia first-offender statute was a prior conviction was not before us in *Miller.*  Miller conceded that his deferred adjudication of guilt was a prior conviction, so the only issue before the court was whether the conviction ever became "final." *Id.* at 822, 823.  Accordingly, *Miller* is not controlling on whether Coffelt's plea is a prior conviction.  *See BDT Prods., Inc. v. Lexmark Int'l, Inc*., 602 F.3d 742, 750 (6th Cir. 2010) ("[O]ne panel of [the Sixth Circuit] is not bound by dicta in a previously published panel opinion." quoting *United States v. Burroughs*, 5 F.3d 192, 194 (6th Cir.1993)).  The issue of whether a plea under a state alternative sentencing statute is a prior conviction under § 841 is an open issue that we must address for purposes of this appeal.

Section 841(b)(1)(A) provides that, for purposes of a conviction involving 50 grams or more of methamphetamine, or 500 grams or more of a mixture containing methamphetamine, "if any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not  be less than 20 years . . . ." 21 U.S.C. § 841(b)(1)(A). "When a term is undefined, we give it its ordinary meaning." *Id.* (quoting *United States v. Santos*, 553 U.S. 507, 511 (2008)).  "'As in all cases of statutory construction, our task is to interpret the words of [the statute] in light of the purposes Congress sought to serve.'"  *Dickerson v. New Banner Inst., Inc*., 460 U.S. 103, 118 (1983) (quoting *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 608 (1979)). In *Graham*, after

noting that § 841 does not define "prior conviction," we looked to the following definitions as an aid to understanding the ordinary meaning of the term "conviction":

> Black's Law Dictionary (9th ed. 2009) defines "conviction" in part as "[t]he act or process of judicially finding someone guilty of a crime; the state of having been proved guilty," and as "[t]he judgment (as by a jury verdict) that a person is guilty of crime." Webster's Third International Dictionary (1986) defines "conviction" in part as "the act of proving, finding, or adjudging a person guilty of an offense or crime . . . ; specif: the proceeding of record by which a person is legally found guilty of any crime esp. by a jury and on which the judgment is based."

*Graham*, 622 F.3d at 458.

Coffelt contends that because the Tennessee statute specifically provides that there has been no adjudication of guilt, his plea does not meet the ordinary meaning of "conviction."

Whether something is a prior conviction for purposes of § 841 is governed by federal law rather than state law. *See United States v. Ortega*, 150 F.3d 937, 948 (8th Cir. 1998) (joining the Third, Fourth, Fifth, Seventh and Eleventh Circuits in holding that federal law governs the definition of a prior conviction under § 841). As noted by the Fifth Circuit, "state law could be looked to 'for informational purposes, but we are not bound by its treatment of a felony conviction when we apply the federal sentence-enhancement provisions.'" *United States v. Cisneros*, 112 F.3d 1272, 1280 (5th Cir. 1997) (quoting *United States v. Morales*, 854 F.2d 65, 68 (5th Cir.1988)).  In determining the meaning of "conviction" under federal law, courts look to the substance of what occurred, rather than to the specific provisions contained in the state statute.  In discussing the term "conviction" under the gun control act, the Supreme Court has noted that in some circumstances, "a guilty plea alone [is] enough to constitute a 'conviction.'" *Dickerson*, 460 U.S. at 112.  "'A plea of guilty differs in purpose and effect from a mere admission or an extrajudicial confession; it is itself a conviction.  Like a verdict of a jury it is conclusive.  More is not required; the court has nothing to do but give judgment and sentence.'" *Id.* at 112-13 (quoting *Kercheval v. United States*, 274 U.S. 220, 223 (1927)).  The Supreme Court held that it was "plain that one cannot be placed on

probation if the court does not deem him to be guilty of a crime."  *Id.* at 113-14 (equating a plea of guilty and its notation by the state court, followed by a sentence of probation, with being "convicted" under 18 U.S.C. § 922(g) & (h)).

Although the Tennessee statute expressly provides that there is no adjudication of guilt, a person qualifies for a deferred sentence under the statute only if he "[i]s found guilty of or pleads guilty or nolo contendere to the offense for which deferral of further proceedings is sought."  Tenn. Code. Ann. § 40-35-313(B)(i)(a).  Coffelt stood before a state judge and pleaded guilty to a felony drug offense and thereafter submitted to a period of probation, living under the threat of revocation and imprisonment were he found noncompliant.  In other words, Coffelt did everything necessary to prove his guilt and to support a conviction, and the court treated him as though he were guilty and had been convicted by placing him on probation.  Coffelt could have no doubt that his plea constituted sufficient proof as to his guilt and a finding thereof by a judge.[2]  Based on the language of *Dickerson* and the ramifications of a guilty plea under a state first-offender diversionary statute, other federal circuit courts have found a conviction for purposes of § 841 despite the lack of a formal entry of judgment.  *See*, *e.g.*, *Cisneros*, 112 F.3d at 1280 (finding a prior conviction under § 841 despite provisions of Texas statute deferring proceedings after a plea without an adjudication of guilt); *United States v. Gomez*, 24 F.3d 924, 930 (7th Cir. 1994) (noting that the defendant had "plainly" been convicted because the state treated his plea and sentence as a "conviction" during the duration of his probation).

In determining what federal law is, at least one court has looked to the Sentencing Guidelines for guidance.  The Sentencing Guidelines provide for consideration of diversionary dispositions as follows:

---

[2]The Tennessee statute itself describes the diversion proceedings as a "conviction":  "[T]he nonpublic records retained by the court, as provided in subsection (a), shall constitute the official **record of conviction** and are subject to the subpoena power of the courts of civil jurisdiction."  Tenn. Code Ann. § 40-35-313(b)(2) (emphasis added).  Furthermore, even under Tennessee law, criminal acts for which a defendant received diversion can be considered as prior criminal behavior to elevate a defendant's range of punishment.  *Tennessee v. Kelley*, 34 S.W.3d 471, 481 (Tenn. Crim. App. 2000).

> Diversion from the judicial process without a finding of guilt (*e.g.*, deferred prosecution) is not counted. A diversionary disposition resulting from a finding or admission of guilt, or a plea of *nolo contendere*, in a judicial proceeding is counted as a sentence under § 4A1.1(c) even if a conviction is not formally entered , except that diversion from juvenile court is not counted.

U.S.S.G. § 4A1.2(f).[3] Because a diversionary disposition resulting from a plea would count as a prior conviction under the career offender provisions of the sentencing guidelines,[4] it makes sense to also treat it as a prior conviction under § 841, because interpreting the term "conviction" differently for purposes of § 841 and the sentencing guidelines "would disrupt uniformity in federal sentencing and frustrate the purpose of sentence enhancement under section 841(b)(1)(B) – to punish and deter recidivism." *United States v. Mejias*, 47 F.3d 401, 404 (11th Cir. 1995) (per curiam).

Treating a plea under a first-offender statute as a conviction for purposes of § 841 is also consistent with the policy behind first-offender provisions. As we noted in *Miller:*

> the policy behind state first-offender provisions and similar alternative sentencing statutes is "to allow first offenders, who are often youthful, an opportunity to straighten themselves out on the road of life without the baggage of a drug conviction on their record" and is meant "as an incentive to learn a lesson . . . [but] is clearly not meant to provide them with a technical legal advantage if, not having learned a lesson, they continue their criminal conduct."

---

[3]Coffelt suggests that a better comparison is found in the federal prejudgment probation and expungement statute, 18 U.S.C. § 3607(a)(2), which, like the Tennessee judicial diversion statute provides that "A disposition under subsection (a), or a conviction that is the subject of an expungement order under subsection (c), shall not be considered a conviction for the purpose of a disqualification or a disability imposed by law upon conviction of a crime, or for any other purpose." 18 U.S.C. § 3607(b). Coffelt contends that if a federal drug offense discharged through prejudgment probation cannot count as a "prior conviction" under § 841, Congress undoubtedly intended to treat a state offense discharged through an identical process in the same manner. The flaw in Coffelt's argument is that he has provided no authority to suggest that federal courts would not use a federal offense discharged through prejudgment probation as a prior conviction under § 841.

[4]The sentencing guidelines instruct that the provisions of §4A1.2 (Definitions and Instructions for Computing Criminal History) are applicable to the determination of whether a defendant has "two prior felony convictions" for purposes of career offender status under § 4B1.1. U.S.S.G. § 4B1.2 Application Notes. Section 4A1.2 provides that for purposes of computing a defendant's criminal history, "[a] diversionary disposition resulting from a finding or admission of guilt, or a plea of nolo contendere, in a judicial proceeding is counted as a sentence under §4A1.1(c) even if a conviction is not formally entered, except that diversion from juvenile court is not counted." U.S.S.G. § 4A1.2(f).

434 F.3d at 824 (quoting *United States v. Petros*, 747 F.Supp. 368, 376 (E.D. Mich. 1990)). Although a determination of whether a plea under the Tennessee judicial diversion statute was a "prior conviction" for purposes of § 841 was not necessary to the determination in *Miller*, the policy analysis is persuasive. *See BDT Prods*., 602 F.3d at 750 ("Although dictum is unnecessary to the decision, it may nevertheless be followed if 'sufficiently persuasive.'" (quoting *PDV Midwest Ref., L.L.C. v. Armada Oil & Gas Co.*, 305 F.3d 498, 510 (6th Cir. 2002)).

Coffelt's successful completion of his probationary sentence and the expungement of his record does not amount to a determination that the crime never occurred or that he was in fact innocent. As noted by the D.C. Circuit, for purposes of sentences imposed under § 841, "Congress has not exempted from the 'prior convictions' that must be counted those convictions removed from a criminal record for policy reasons unrelated to innocence or an error of law." *United States v. Law*, 528 F.3d 888, 911 (D.C. Cir. 2008); *see also United States v. Norbury*, 492 F.3d 1012, 1015 (9th Cir. 2007) ("An expunged or dismissed state conviction qualifies as a prior conviction if the expungement or dismissal does not alter the legality of the conviction or does not represent that the defendant was actually innocent of the crime.").

Every other circuit that has considered the issue of alternative or diversionary sentences for first offenders has held that a deferred, expunged or dismissed state conviction qualifies as a prior conviction under § 841. *See*, *e.g.*, *United States v. Craddock*, 593 F.3d 699, 701 (8th Cir. 2010); *United States v. Law*, 528 F.3d 888, 910-11 (D.C. Cir. 2008); *United States v. Norbury*, 492 F.3d 1012, 1015 (9th Cir. 2007); *United States v. Cisneros*, 112 F.3d 1272, 1281 (5th Cir. 1997); *United States v. Mejias*, 47 F.3d 401, 404 (11th Cir. 1995) (per curiam); *United States v. Gomez*, 24 F.3d 924, 927-28 (7th Cir. 1994); *United States v. Meraz*, 998 F.2d 182, 184-85 (3d Cir.1993); *United States v. Campbell*, 980 F.2d 245, 249-51 (4th Cir.1992). Based on the language of § 841, the manner in which diversionary dispositions are treated under the sentencing guidelines, and the policies behind diversionary programs, we join with the other circuits

in concluding that a guilty plea under a state first-offender diversionary program qualifies as a prior conviction for purposes of a sentence enhancement under § 841.

This conclusion does not violate the rule of lenity. The rule of lenity "ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered." *United States v. Lanier*, 520 U.S. 259, 266 (1997). "If the statute remains ambiguous after consideration of its plain meaning, structure and legislative history, the rule of lenity is applied in favor of criminal defendants." *United States v. Boucha*, 236 F.3d 768, 774 (6th Cir. 2001). "The 'policy of lenity means that the Court will not interpret a federal statute so as to increase the penalty it places on an individual when such an interpretation can be no more than a guess as to what Congress intended.'" *Id.* at 774-75 (quoting *Bifulco v. United States*, 447 U.S. 381, 387 (1980)). Based on the analysis above, the federal statute is not ambiguous. The term "conviction" as used in § 841 is broad enough to include guilty pleas followed by a term of probation. Coffelt was on fair notice that a plea and resulting sentence of probation could be used to enhance his sentence if he continued to engage in felony drug offenses.

Coffelt contends that even if his 2006 guilty plea can be considered a conviction, the conviction was not final for purposes of § 841 because it was not subject to appeal. This argument lacks merit. Federal law governs whether a prior conviction is final within the meaning of § 841. *Adams v. United States*, 622 F.3d 608, 612 (6th Cir.2010). "A conviction becomes final for the purpose of [federal] sentencing when the time for taking a direct appeal from the judgment of conviction has expired." *Miller*, 434 F.3d at 823 (6th Cir. 2006) (citing *United States v. Walker*, 160 F.3d 1078, 1093 (6th Cir.1998)). In *Miller*, the prior conviction became final 30 days after sentencing when Miller's time to appeal expired. 434 F.3d at 824. Unlike the Georgia statute considered in *Miller*, Tennessee's judicial diversion statute does not provide for direct appeal. *See Tennessee v. Norris*, 47 S.W.3d 457, 461-63 (Tenn. Crim. App. 2000) (holding that defendant placed on probation under judicial diversion statute had no appeal as of right and no basis for discretionary appeal). Coffelt suggests that because he had no right to appeal, his conviction never became final. Coffelt's argument is not

persuasive.  The purpose of the finality requirement is to prevent sentence enhancement based on a prior conviction that remains subject to direct attack on appeal.  *See United States v. Meraz*, 998 F.2d 182, 184 (3d Cir. 1993); *United States v. Lippner*, 676 F.2d 456 (11th Cir.1982); *Williams v. United States*, 651 F.2d 648 (9th Cir.1981).  This is a recognition that it would not be appropriate to enhance a sentence based on a conviction that is later removed from a criminal record based on innocence or legal error.  *See Law*, 528 F.3d at 911.  Contrary to Coffelt's argument, his inability to appeal his judicial diversion does not negate a finding of finality.  Instead, it supports a finding of finality because his conviction is not subject to reversal.

## B.  Constructive Amendment or Prejudicial Variance

Three of the appellants, Coffelt, Pritchett and Johnson, argue that the district court's correction of the jury instruction as to Count 2 in response to a jury question resulted in a constructive amendment and/or a prejudicial variance.

We review de novo the legal question of whether an indictment has been constructively amended by the evidence or the jury instructions.  *United States v. Budd*, 496 F.3d 517, 521 (6th Cir. 2007).  "'A constructive amendment results when the terms of an indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than the one charged in the indictment.'"  *Id*. (quoting *United States v. Smith*, 320 F.3d 647, 656 (6th Cir.2003)).  "[C]onstructive amendments are considered per se prejudicial and are reversible error."  *Id.*

We also review de novo the question of whether a variance has occurred.  *United States v. Adams*, 722 F.3d 788, 805 (6th Cir. 2013).  A variance occurs when the evidence at trial proves facts materially different from those alleged in the indictment.  *Budd*, 496 F.3d at 521.  Variances, are not per se prejudicial.  *Id*.  We will reverse the conviction if (1) a variance occurred and (2) the variance affected the defendant's substantial rights.  *Adams*, 722 F.3d at 805.

Count 2 of the indictment charged the defendants with conspiracy to possess and distribute "pseudoephedrine, a list I chemical, and iodine, a list II chemical, knowing and having reasonable cause to believe that the chemical would be used to manufacture methamphetamine" in violation of 21 U.S.C. §  841(c)(2).  The trial court initially instructed the jury that to find a defendant guilty of the conspiracy charge in Count 2, the government must prove a conspiracy "to commit the crime of possessing or distributing pseudoephedrine and iodine knowing or have reasonable cause to believe the pseudoephedrine and iodine would be used to manufacture methamphetamine."  In response to a jury note asking whether they were required to find both pseudoephedrine and iodine for a guilty verdict on Count 2, the Court stated that it was only necessary for the government to prove "either pseudoephedrine or iodine was the purpose."  The Court provided the jury with an amended instruction on Count 2 as follows:  "First, that two or more persons conspired or agreed to commit the crime of possessing or distributing pseudoephedrine or iodine knowing or with reasonable cause to believe that the pseudoephedrine or iodine would be used to manufacture methamphetamine."

Section 841(c)(2) provides that it is a violation of federal law to knowingly or intentionally possess or distribute "a listed chemical knowing, or having reasonable cause to believe, that the listed chemical will be used to manufacture a controlled substance."  21 U.S.C. § 841(c)(2).  Section 841(c)(2) refers to "a listed chemical."  It does not require possession or distribution of more than one listed chemical.  *See*, *e.g.*, *United States v. Hettinger*, 242 F. App'x 287, 298-99 (6th Cir. 2007) (affirming conviction of defendant under § 841(c)(2) based on possession of only one listed chemical, pseudoephdrine).  "'It is settled law that an offense may be charged conjunctively in an indictment where a statute denounces the offense disjunctively.'" *United States v. McAuliffe*, 490 F.3d 526, 534 (6th Cir. 2007) (quoting *United States v. Murph*, 707 F.2d 895, 896 (6th Cir. 1983)).  At trial, the government may prove and the trial judge may instruct in the disjunctive form used in the statute.  *Id.*

> The government's right to charge in the conjunctive and prove in the disjunctive reflects the necessary discrepancies between indictments and jury instructions.  Indictments must be phrased in the conjunctive so that

> society can be confident that the grand jury has found probable cause for all of the alternative theories that go forward.  Juries, on the other hand, may convict a defendant on any theory contained in the indictment.  As a result, judges read jury instructions in the disjunctive.

*United States v. LaPointe*, 690 F.3d 434, 440 (6th Cir. 2012).

Count 2 of the indictment properly charged in the conjunctive (pseudoephedrine and iodine).  The amended instruction on Count 2, which instructed the jury in the disjunctive (pseudoephedrine or iodine) did not result in a constructive amendment or a variance.  It did not create a possibility that defendants would be convicted of an offense other than the one alleged in the indictment nor did it invite the jury to find guilt on facts materially different from those alleged in the indictment.  The only possible wrinkle in this case is the fact that the jury was initially instructed in the conjunctive and later instructed in the disjunctive.  However, none of the defendants has suggested that he tailored his arguments or proofs based on the proposed original instructions, or that he was otherwise prejudiced by the amendment of the instructions.  There is nothing in this record to suggest that the amendment of the jury instructions affected the defendants' rights to a fair trial.

## C.  Agent Frizzell's Opinion Testimony

Appellant Pritchett contends that the district court abused its discretion by allowing Agent Frizzell to testify as both a fact and an expert witness without giving the jury a cautionary instruction regarding his dual role.

Because Pritchett did not request a cautionary instruction or object to the lack of such an instruction at trial, we review the lack of a cautionary instruction for plain error. *United States v. Lopez-Medina*, 461 F.3d 724, 743 (6th Cir. 2006) (citing *Johnson v. United States*, 520 U.S. 461, 466 (1997)).  "A defendant can demonstrate plain error by showing (1) an error, (2) that is plain, and (3) that affects his fundamental rights." *United States v. Vasquez*, 560 F.3d 461, 470 (6th Cir. 2009).  "If the defendant satisfies these three conditions, we may exercise our discretion to correct the error only if the error seriously affected the fairness, integrity, or public reputation of the judicial

proceedings." *Id.* Pritchett contends that the failure to give a cautionary instruction was plain error because Frizzell interspersed his factual testimony regarding the search of Pritchett's home with opinions regarding the indicia of methamphetamine manufacturing.

Agent Frizzell participated in the arrest of Pritchett and the search of Pritchett's residence. Frizzell testified about the items seized from Pritchett's residence, including coffee filters, plastic tubing, a zip-lock baggie, a coffee pot, and propane tanks. He testified that the reason those items were seized was because of their suspected association with the manufacture of methamphetamine. He also testified that the items were photographed and then destroyed as hazardous materials before any testing was conducted on them.

Our circuit does not categorically prohibit an officer from testifying as both a fact witness and an expert witness, but has noted that care should be taken "to assure that the jury is informed of the dual roles of a law enforcement officer as a fact witness and an expert witness, so that the jury can give proper weight to each type of testimony." *United States v. Lopez-Medina*, 461 F.3d 724, 743 (6th Cir. 2006) (quoting *United States v. Thomas*, 74 F.3d 676, 683 (6th Cir. 1996)). "[P]lain error depends on the facts of the particular case." *United States v. Martin*, 520 F.3d 656, 659 (6th Cir. 2008) (quoting *Clark v. Maggio*, 737 F.2d 471, 479 (5th Cir. 1984)). In *Lopez-Medina*, this court found plain error where there was "no cautionary jury instruction regarding the agents' dual witness roles nor a clear demarcation between their fact testimony and expert opinion testimony." *Id.* at 745. In *Vasquez*, this Court held that the failure to give a cautionary instruction regarding the detective's dual role was erroneous, but that the error was harmless because the defendant failed to establish that the error affected his substantial rights. 560 F.3d at 470. *See also Martin*, 520 F.3d at 659-60 (holding that the lack of a cautionary instruction for an officer's dual testimony, although erroneous, did not "seriously affect[ ] the fairness, integrity, or public reputation of the proceedings" in the absence of other evidentiary errors).

Frizzell's opinion testimony necessarily included both fact and opinion testimony.  He could not explain his reasons for seizing, photographing, and destroying normal household items without providing an explanation as to their association with the manufacture of methamphetamine.  Even if it was error not to give a cautionary instruction regarding Frizzell's dual testimony, Pritchett has not shown that the error affected his substantial rights.  The trial court gave the jurors the Sixth Circuit Standard Jury Instruction on opinion evidence with respect to three of the government's expert witnesses, so the jurors had the tools for properly evaluating the opinions in Frizzell's testimony.  Moreover, similar items were seized from co-defendant Coffelt's residence, and many of the opinions expressed by Frizzell, such as the role of red phosphorous and coffee filters in the manufacture of methamphetamine, were discussed in more detail by the government's expert witnesses.  In addition, during his cross-examination of Frizzell, Pritchett's counsel did not dispute the relationship of the items seized to the manufacture of methamphetamine, focusing instead on the location of the items in areas that were accessible to others.  Under these facts, any error in failing to give a cautionary instruction regarding Agent Frizzell's dual role testimony did not seriously affect Pritchett's substantial rights or the fairness, integrity, or public reputation of the judicial proceedings.

## D.  Sufficiency of the Evidence

Appellant Johnson challenges the sufficiency of the proof to support a finding that he was part of a conspiracy.  He contends that the proofs supported nothing more than that he was an occasional buyer of methamphetamine.

"We review *de novo* a challenge to the sufficiency of the evidence supporting a criminal conviction."  *United States v. Carson*, 560 F.3d 566, 579 (6th Cir. 2009). In evaluating a sufficiency of the evidence claim, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  "'In undertaking this analysis, this court neither independently weighs the evidence, nor judges the

credibility of witnesses who testified at trial.'" *United States v. Howard*, 621 F.3d 433, 459-60 (6th Cir. 2010) (quoting *United States v. Talley*, 164 F.3d 989, 996 (6th Cir.1999)). "[T]he defendant bears a heavy burden when making a sufficiency of the evidence challenge." *Carson*, 560 F.3d at 580.

To prove a conspiracy under 21 U.S.C. § 846, the government was required to prove, beyond a reasonable doubt, "(1) an agreement to violate drug laws, (2) knowledge and intent to join the conspiracy, and (3) participation in the conspiracy." *United States v. Gibbs*, 182 F.3d 408, 420 (6th Cir.1999). "An agreement to violate the drug laws need not be express or formal. 'A tacit or mutual understanding among the parties is sufficient.'" *United States v. Caver*, 470 F.3d 220, 233 (6th Cir. 2006) (quoting *United States v. Forrest*, 17 F.3d 916, 918 (6th Cir.1994)). "The existence of a conspiracy may be inferred from circumstantial evidence that can reasonably be interpreted as participation in the common plan." *United States v. Martinez*, 430 F.3d 317, 330 (6th Cir. 2005) (internal quotation omitted). "[O]nce the existence [of] a conspiracy is shown, the evidence linking an individual defendant to that conspiracy need only be slight." *Caver*, 470 F.3d at 233. "[A] buyer-seller relationship is not alone sufficient to tie a buyer to a conspiracy, for mere sales do not prove the existence of agreement that must exist for there to be a conspiracy," but "evidence of repeat purchases from a single source and large volumes of narcotics creates an inference of conspiracy." *United States v. MacLloyd*, 526 F. App'x 434, 439 (6th Cir. 2013) (citations omitted), *cert. denied*, 134 S. Ct. 280 (2013).

The government presented evidence that Johnson purchased 242.4 grams of pseudoephedrine in 100 separate purchases from various pharmacies. Co-Defendant Lynn Dempsey testified that in 2008 and 2009, every week or every other week, Johnson would purchase his limit of pills and give them to Dempsey in exchange for methamphetamine. Johnson's son testified that he had seen Johnson trade pseudoephedrine for methamphetamine with Dempsey ten to twelve times.

Johnson challenges the testimony of the pharmacists, because they were not familiar with him and did not witness his purchases. He challenges the testimony of his

co-defendants because they were not credible.  He points out that there was no evidence that he was ever present during the manufacture of methamphetamine.  According to Johnson, the evidence, at best, shows that he used methamphetamine and had an occasional buyer-seller relationship with Dempsey.

In undertaking a sufficiency of the evidence analysis, "'this court neither independently weighs the evidence, nor judges the credibility of witnesses who testified at trial.'"  *United States v. Howard*, 621 F.3d 433, 459-60 (6th Cir. 2010) (quoting *United States v. Talley*, 164 F.3d 989, 996 (6th Cir.1999)).  Viewing the evidence in the light most favorable to the prosecution, the Court is satisfied that the evidence was sufficient to support the jury's finding that Johnson knowingly participated in the drug conspiracy.

**E.  Testimony of Paul Knight**

Appellant Johnson argues that the trial court erred in allowing Paul Knight, a confidential informant, to testify over Johnson's objection that he had used methamphetamine with Johnson three to five years before the conspiracy.

At trial, the government asserted that Knight's use of methamphetamine with Johnson in the past provided the context for Knight's initiation of a conversation with Johnson in 2009 about methamphetamine.  The government also asserted that Johnson's prior use of methamphetamine was relevant to show his participation in the conspiracy. The trial court, citing *United States v. Hardy*, 228 F.3d 745 (6th Cir. 2000), determined that the testimony was admissible as evidence to demonstrate relationships.  Johnson contends that the evidence was not proper background evidence because his relationship with Knight was not at issue.

We review evidentiary rulings for an abuse of discretion.  *United States v. Ganier*, 468 F.3d 920, 925 (6th Cir. 2006).  Admissible background evidence "consists of those other acts that are inextricably intertwined with the charged offense or those acts, the telling of which is necessary to complete the story of the charged offense." *Hardy*, 228 F.3d at 748.  It has "a causal, temporal or spatial connection with the charged

offense." *Id.* "Typically, such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense." *Id.* In *Hardy*, this court held that a confidential informant's testimony regarding his drug transactions with the defendant six years prior to the conspiracy was not proper background evidence or 404(b) evidence. The court noted that there was not an identity of parties involved in the transactions, the testimony was not necessary to explain the charged offense, to complete the story of the confidential informant's testimony, or to establish the charged conspiracy itself. *Id.* at 749-50. The *Hardy* court nevertheless determined that the admission of the testimony was harmless. *Id.* at 751 ("In light of other compelling evidence against Rouse, we can say with 'fair assurance' that the jury's verdict 'was not substantially swayed' by any improperly received evidence of other crimes committed by the defendant."). In *United States v. Toro*, 133 F. App'x 181 (6th Cir. 2005), we held that the limited testimony regarding drug transactions between Wright and Castillo-Mejia prior to the beginning of the conspiracy was proper background evidence because it "was necessary to show how Wright came to be acquainted with Castillo-Mejia and how their heroin-dealing relationship began." *Id.* at 187.

The testimony regarding Johnson's prior use was brief and was related to the criminal conduct for which Johnson was on trial. Nevertheless, it was not about conduct close in time to the charged conspiracy, and the government has not suggested that Knight's and Johnson's prior relationship had anything to do with the inception of the conspiracy. Moreover, while Knight's relationship to Johnson may have been important to Knight's ability to initiate a conversation with Johnson about methamphetamine, it is not clear that it was necessary to explain to the jury the nature of their prior relationship.

Even if it was error to admit this testimony, its admission does not warrant reversal. The Federal Rules of Criminal Procedure provide that "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." Fed.

R. Crim. P. 52(a).  Harmless error analysis focuses not on whether the defendant could have been convicted without the evidence erroneously admitted, but on "'whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.'"  *United States v. Clay*, 667 F.3d 689, 700 (6th Cir. 2012) (quoting *United States v. DeSantis*, 134 F.3d 760, 769 (6th Cir.1998)).  Error is "'harmless unless it is more probable than not that the error materially affected the verdict.'"  *Id.* (quoting *United States v. Childs*, 539 F.3d 552, 569 (6th Cir. 2008)).  "Admission of other-acts evidence constitutes 'harmless error' if the other record evidence of guilt is overwhelming, eliminating any fair assurance that the conviction was substantially swayed by the error."  *United States v. Hardy*, 643 F.3d 143, 153 (6th Cir. 2011), *cert. denied*, 132 S. Ct. 762 (2011).

There is no reasonable possibility that the evidence complained of might have contributed to Johnson's conviction.  The testimony was brief, use was not an element of the crime Johnson was charged with, and the jury would have readily inferred that Johnson was a user based on evidence that he routinely exchanged pseudoephedrine for methamphetamine.

## F. Sentencing

The jury convicted Johnson of the lesser-included offense of conspiracy to manufacture and distribute more than 5 grams of actual methamphetamine or 50 grams of methamphetamine mixture, rather than the charged 50 grams of actual methamphetamine or 500 grams of methamphetamine mixture.  At sentencing, the court held Johnson responsible for the quantity of pseudoephedrine he purchased, i.e., 196 grams, even though the jury found that Johnson purchased less than 100 grams of pseudoephedrine when it convicted Johnson of conspiracy to manufacture and distribute at least 5 grams of actual methamphetamine but fewer than 50 grams of actual methamphetamine (using the 2:1 ratio of pseudoephedrine to actual methamphetamine presented by the government). Johnson contends that the district court improperly sentenced him based on a greater quantity of drugs than found by the jury.

Johnson's argument lacks merit. Johnson's sentence of 97 months did not exceed the statutory maximum for conspiracy to manufacture and distribute more than 5 grams of actual methamphetamine or 50 grams of methamphetamine mixture. *See* 21 U.S.C. § 841(b)(1)(B) (providing for a sentence of 5-40 years for 5 grams or more of methamphetamine). So long as the sentence falls within the statutory range prescribed for the jury conviction, a district court may sentence a defendant based on acquitted conduct because the standard of proof at sentencing is the lower preponderance of the evidence standard. *United States v. White*, 551 F.3d 381, 386 (6th Cir.2008) (en banc). As noted in *United States v. Johnson*, 732 F.3d 577 (6th Cir. 2013), the Supreme Court's recent decision in *Alleyne v. United States*, ––– U.S. ––––, 133 S. Ct. 2151(2013), "did not extend *Apprendi* to facts that do not increase the prescribed statutory penalties." *Id.* at 584. *See also United States v. Jones*, 533 F. App'x 562, 573-74 (6th Cir. 2013) (rejecting contention that amount of drugs attributable should have been capped by the jury verdict finding him only responsible for between 5 grams and 50 grams of meth because the sentence fell within the statutory range). Johnson's 97-month sentence was below the 40-year statutory maximum, and he was sentenced pursuant to the 5-year mandatory minimum triggered by the jury's findings, instead of the 10-year mandatory minimum triggered by the sentencing judge's findings. Thus, the district court did not violate *Alleyne* because neither Johnson's statutory maximum sentence nor his mandatory minimum sentence was increased by judge-found facts. Accordingly, Johnson's challenge to his sentence lacks merit.

Pritchett and Rollins filed supplements to their appeals with citations to *Alleyne*, arguing that their sentences were unconstitutionally enhanced based on the filing of a notice of prior convictions. They contend that based on the reasoning of *Alleyne*, their sentences should be vacated and remanded for resentencing.

Neither Pritchett nor Rollins raised any challenge to his sentence in his initial brief on appeal. We have held that an issue is waived when it is not raised in the appellant's opening brief. *Miller v. Admin. Office of Courts*, 448 F.3d 887, 893 (6th Cir. 2006); *see* Fed. R. App. P. 28(a) (requiring the appellant's brief to contain a statement

of the issues presented for review and an argument on each issue presented).  However, we have noted that the waiver may be  subject to exceptions, such as when the argument is based on intervening authority.  *United States v. Huntington Nat'l Bank*, 574 F.3d 329, 331 (6th Cir. 2009) ("No doubt exceptions abound – when intervening authority arises or when the litigant otherwise offers a legitimate explanation."); *DSC Communications Corp. v. Next Level Communications*, 107 F.3d 322, 326 n.2 (6th Cir. 1997) ("[W]e have yet to address our procedure when a party wishes to file a supplemental brief on an issue because of an intervening change in law").  *Alleyne* was issued after the appellants' initial briefs were due.  Assuming they properly presented their sentencing challenges based on the intervening authority of *Alleyne*,  we nevertheless find that their challenges lack merit.

Since *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), it has been well-settled that "a judge is permitted to find, based on the preponderance of the evidence, the fact of a prior conviction."  *United States v. Martin*, 526 F.3d 926, 941 (6th Cir. 2008).  In *Alleyne* the Supreme Court held that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." 133 S. Ct. at 2155.  However, the Supreme Court specifically declined to disturb the narrow exception for the fact of a prior conviction established by *Almendarez-Torres*.  *Alleyne*, 133 S. Ct. at 2160 n.1.  "Because the parties do not contest that decision's vitality, we do not revisit it for purposes of our decision today."  *Id*.  As we noted in *United States v. Mack*, 729 F.3d 594, 609 (6th Cir. 2013),  "[a]lthough *Almendarez-Torres* may stand on shifting sands, the case presently remains good law and we must follow it until the Supreme Court expressly overrules it."  *See also United States v. Wynn*, 531 F. App'x 596, 597 (6th Cir.) (per curiam), *cert. denied*, 134 S. Ct. 347 (2013)  (holding that *Alleyne* did not undermine the rule set forth in *Almendarez-Torres*); *United States v. Keglar*, No. 13-5133, — F. App'x —, 2013 WL 5509103, at *1 (6th Cir. Oct. 7, 2013) (rejecting argument that *Alleyne* requires prior convictions to be alleged in the indictment and found as facts by the jury at trial).  Because *Alleyne* did not disturb the holding in *Almendarez-Torres*, Pritchett and Rollins' challenges to their sentences are denied for lack of merit.

### G.  Motion to Suppress

Finally, we evaluate Appellant Rollins' contention that the district court erred in denying his motion to suppress evidence seized from his car following two separate traffic stops, one on September 15, 2008, in Grundy County, and one on June 25, 2009, in Tracy City.  Rollins' motion was based on his contention that the searches were improper searches incident to arrest under *Arizona v. Gant*, 556 U.S. 332 (2009),[5] and that all evidence found in his vehicles should have been suppressed.

The Magistrate Judge held an evidentiary hearing on the motions and made findings of fact which are not contested on appeal.  On September 15, 2008, Deputy Jon Bell stopped Rollins for passing in a no-passing zone.  Deputy Bell determined that Rollins' license had been revoked and advised Rollins that he was going to jail.  Deputy Bell procured a tow slip, called for a tow truck, and began to conduct an inventory search of the vehicle.  Deputy Bell testified that when he arrests a driver during a traffic stop and there is no passenger to drive the vehicle, it is his practice to have the vehicle towed.  He further testified that it is the Grundy County Sheriff's Department's policy to inventory all vehicles that are towed.  After Deputy Bell found the incriminating evidence in Rollins' vehicle, Grundy County Sheriff Myers arrived at the scene.  Sheriff Myers drafted the affidavits of complaint against Rollins, and stated in those affidavits that Deputy Bell conducted the search "incident to the arrest."  Despite the Sheriff's statement, the Magistrate judge found Deputy Bell's testimony that he conducted an inventory search to be credible.

On June 25, 2009, Officer Hawes of the Tracy City Police Department stopped Rollins for speeding.  Rollins was unable to produce his license, registration, or proof of insurance, but gave Hawes his birth date and social security number.  Based on this information, Hawes ascertained that Rollins' license had been revoked.  At this point Hawes decided he would arrest Rollins. Grundy County Deputy Bell heard the exchange

---

[5]In *Gant* the Supreme Court held that the search of a vehicle incident to the arrest of a recent occupant is justified only if the arrestee was unrestrained and within reaching distance of the passenger compartment at the time of the search, or if it was reasonable for the arresting officers to believe that evidence relevant to the crime of arrest might be found in the vehicle. *Id.* at 35.

over the police radio and recognized Rollins' name.  He called Officer Hawes and informed him that Rollins might have methamphetamine on him.  Officers Hawes waited for Deputy Bell to arrive, then put Rollins under arrest, and began an inventory search in anticipation of having the vehicle towed.  Officer Hawes testified that if he arrests the driver, the vehicle is towed unless there is someone present who can drive the vehicle away.  He further testified that it was the policy of the Tracy City Police Department to inventory all vehicles that are to be towed.

Based upon these findings of fact, the Magistrate Judge recommended that Rollins' motion to suppress be denied because both searches were valid inventory searches as opposed to impermissible searches incident to arrest.  The trial court adopted the Report and Recommendation and denied the motion to suppress.

"When reviewing a district court's decision on a motion to suppress, we use a mixed standard of review: we review findings of fact for clear error and conclusions of law de novo." *United States v. Cochrane*, 702 F.3d 334, 340 (6th Cir. 2012) (quoting *United States v. See*, 574 F.3d 309, 313 (6th Cir. 2009)).  "'When a district court has denied a motion to suppress, this Court reviews the evidence in the light most likely to support the district court's decision.'"  *Id.* (quoting *United States v. Adams*, 583 F.3d 457, 463 (6th Cir. 2009)).  A factual finding is clearly erroneous only where, considering all of the evidence, the court "is left with the definite and firm conviction that a mistake has been committed."  *United States v. Sanford*, 476 F.3d 391, 394 (6th Cir. 2007).

On appeal, Rollins argues that the fruits of the September 2008 Grundy County search were subject to suppression because the search was an improper search incident to arrest.  Rollins asserts that the affidavits prepared by the sheriff that described the search as being incident to arrest should have been given greater weight than the contradictory testimony of the arresting officer.  The Magistrate Judge was aware of the affidavits, but found that Deputy Bell's testimony that he searched the car as part of an inventory search was credible.  "This court accords deference to the district court's assessment of credibility." *United States v. Howard*, 621 F.3d 433, 450 (6th Cir. 2010).  Rollins has not presented any basis for overturning the Magistrate Judge's credibility

finding. He does not contest the finding that the traffic stop was valid, that he was properly arrested for driving without a license, that he did not have a passenger with him who could drive his car, that it was routine police procedure to tow cars when the driver is arrested and there is no one present who can drive the vehicle away, or that Grundy County has a policy requiring the inventorying of all vehicles that will be towed. It was not clearly erroneous for the Magistrate Judge to accept Deputy Bell's sworn testimony over the sheriff's affidavits in light of the fact that the sheriff did not conduct the search, the sheriff was not present when Deputy Bell decided to search the car, and the sheriff did not testify at the suppression hearing. Because the finding that the search was a valid inventory search was not clearly erroneous, the trial court did not err in denying Rollins' motion to suppress the fruits of the September 2008 Grundy County search.

Rollins argues that the fruits of the June 2009 Tracy City search were subject to suppression because the traffic stop was unreasonably extended beyond its original purpose without "separate reasonable suspicion" when Officer Hawes elected to wait for Deputy Bell to arrive. At the evidentiary hearing before the Magistrate Judge and in his objections to the Report and Recommendation, Rollins only challenged the June 2009 search as being incident to arrest. Because he did not previously raise the argument that the traffic stop was unreasonably prolonged, it has been waived. *See United States v. Lopez-Medina*, 461 F.3d 724, 738-39 (6th Cir. 2006) ("Even when a party has brought a pretrial suppression motion, . . . any new suppression arguments raised for the first time on appeal that were not contained in the original suppression motion will be deemed waived under Rule 12(e).") Nevertheless, it may be reviewed for plain error. *Id.* ("[W]e have applied Rule 52(b)'s plain error review to new suppression arguments raised for the first time on appeal after a defendant's original suppression arguments proved unsuccessful at the trial court level."). "An error is plain when it is obvious, affects substantial rights, and seriously affects the fairness or integrity of judicial proceedings." *Id.* at 739 (citing *Johnson v. United States*, 520 U.S. 461, 466-67 (1997)).

Officer Hawes waited approximately ten minutes for Bell to arrive before placing Rollins under arrest and conducting the inventory search. During the inventory search

the officers found several 2-liter Coke bottles containing what appeared to be fuel, a can of HEET, and a can of carburetor cleaner which Deputy Bell recognized as ingredients used in the manufacture of methamphetamine.  Rollins contends that Officer Hawes improperly extended the traffic stop beyond its original purpose without reasonable suspicion in violation of Rollins' Fourth Amendment right to be free from unreasonable seizures.  *See United States v. Davis*, 430 F.3d 345, 353 (6th Cir. 2005) ("Once the purpose of the initial traffic stop is completed, an officer cannot further detain the vehicle or its occupants unless something happened during the stop to cause the officer to have a 'reasonable and articulable suspicion that criminal activity [is] afoot.'").

The ten minute delay was not unconstitutional because during the traffic stop Officer Hawes developed probable cause to arrest Rollins for driving without a valid driver's license.  Moreover, the discovery of the items in the trunk of Rollins' vehicle falls within the inevitable discovery exception to the exclusionary rule.  The inevitable discovery doctrine, "allows unlawfully obtained evidence to be admitted at trial if the government can prove by a preponderance that the evidence inevitably would have been acquired through lawful means." *United States v. Kennedy*, 61 F.3d 494, 497 (6th Cir. 1995) (citing *Nix v. Williams*, 467 U.S. 431, 444 (1984)).  "[T]he doctrine applies where the facts indicate that the officers inevitably would have discovered and seized the tainted evidence by following 'routine procedures.'" *United States v. Garcia*, 496 F.3d 495, 506 (6th Cir. 2007) (quoting *United States v. Vite–Espinoza*, 342 F.3d 462, 466 (6th Cir. 2003)).  Even if Rollins had not heard from Deputy Bell or awaited his arrival, he would still have arrested Rollins for lack of a valid drivers' license, and he would still have inventoried Rollins' vehicle before having it towed.  And even if Officer Hawes would not have personally recognized the connection of these items to the manufacture of methamphetamine, their significance would eventually have been recognized in light of Rollins' previous arrest for methamphetamine and the discovery of methamphetamine in Rollins' wallet when he was brought to the jail.  Accordingly, there was no plain error in denying Rollins' motion to suppress the fruits of the June 2009 traffic stop.

## III.  CONCLUSION

For the reasons stated in this opinion, Defendants' convictions and sentences are **AFFIRMED**.