NOT RECOMMENDED FOR PUBLICATION
File Name: 16a0330n.06

No. 14-2457

**FILED**
Jun 16, 2016
DEBORAH S. HUNT, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff – Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| RICARDO FONVILLE, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendant – Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE:    SILER, ROGERS, and SUTTON, Circuit Judges.

ROGERS, Circuit Judge.  Ricardo Fonville challenges his conviction of possession with intent to distribute over twenty-eight grams of crack cocaine and his corresponding sentence of ninety-seven months' imprisonment.  He challenges under the Fourth Amendment his arrest and the search of his car.  These arguments fail: he was arrested when he told the officers he was subject to an arrest warrant that also appeared in the officers' database, and following the valid arrest there was no constitutional time limit on the ensuing dog sniff that allegedly occurred thirty minutes later.  Fonville also makes a Sixth Amendment argument that the district court should have sua sponte declared a mistrial when a DEA agent, testifying that Fonville admitted selling crack cocaine, also testified that Fonville would not say where he got the drugs. However, the district court's immediate curative instruction—the content of which was agreed to

by both parties—was sufficient. Fonville's remaining evidentiary and sentencing arguments are also without merit.

Fonville was the subject of a DEA-task-force investigation in 2013. The task force learned from its surveillance that Fonville drove a Dodge Durango. On October 17, 2013, two officers saw Fonville—in his Durango—change lanes on an interstate without signaling. The officers proceeded to pull Fonville over for the violation.

Earlier that day, the officers confirmed that there was an active arrest warrant in the system for Fonville. The warrant was for unpaid child support. During the stop, Fonville admitted there was an outstanding warrant for his arrest. The officers arrested Fonville based on this information. Fonville was informed of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966).

Fonville consented to a search of his vehicle. The officers called in a K-9 unit to sniff Fonville's Durango on the side of the interstate. The K-9 unit took approximately fifteen minutes to reach the scene.[1] The dog sniffed the Durango and alerted to the door handle on the driver's side. The officers then moved Fonville and the Durango to the local police precinct to conduct a more thorough search away from the hustle and bustle of the interstate's heavy traffic.

While conducting the search at the precinct, the officers discovered 123 grams of crack cocaine in a "cookie" form that was hidden in the driver's door, where the dog had previously alerted. Officer Darren Johnson, one of the arresting officers, testified that Fonville at this point told the officers that he "had been riding with the crack all day," that an unidentified person had given him the crack, that he had "just gotten out of jail and needed to get back up on his feet,"

---

[1] Fonville states in his brief that the K-9 unit took thirty minutes to arrive. Fonville cites the testimony of one of the arresting officers for this fact. This, however, is problematic—the cited testimony actually confirms that the K-9 unit took only fifteen minutes, not thirty.

and that he wanted to break the crack up into "rocks," which would individually sell for a low price.

A grand jury indicted Fonville for possession with intent to distribute the crack cocaine found in the Durango. Before trial, Fonville filed a motion to suppress the evidence obtained from his traffic stop. That motion challenged the warrantless search of the Durango. The district court held an evidentiary hearing on the motion. At this hearing, Fonville's lawyer agreed specifically that there was a valid arrest warrant outstanding for Fonville. After the hearing, the district court denied the motion. The district court first reasoned that the officers had probable cause to conduct the traffic stop due to Fonville's failure to signal when changing lanes, as well as the existence of an outstanding warrant for Fonville's arrest. The court also reasoned that the dog sniff did not constitute a search under *Illinois v. Caballes*, 543 U.S. 405 (2005), that the period of detention between the stop and the K-9 unit's arrival was reasonable in light of "the nature of the stop, [Fonville]'s suspicious behavior, and his known connections to narcotics trafficking," and that the dog's alert of contraband gave the officers probable cause to conduct a more thorough search of the Durango.

The case proceeded to trial. Before jury selection, the prosecution sought to be allowed to offer evidence of a prior conviction. In a 2008 New Jersey case, Fonville pleaded guilty to conspiracy to possess with intent to distribute cocaine in more than five kilograms. The court allowed the evidence over the defense's objection and stated that it would provide an instruction to the jury limiting the permissible consideration of the evidence to specific intent for the 2013 crime.

The prosecution in its opening statement mentioned Fonville's being on probation for his previous crime. Prior to the defense's opening statement, the court held a sidebar during which

the defense objected to the mention of probation on the ground that probation was not included in the pretrial documents listing evidence to be introduced under Federal Rule of Evidence 404(b). The defense asked for a mistrial on these grounds. The prosecution responded by stating that it was Fonville who told the officers during the stop that he was on probation, and the defense therefore had notice that it could be introduced. The court denied the motion for mistrial, finding no manifest necessity to do so. The defense declined a curative instruction.

Officer Johnson was the first witness to testify at trial. On cross examination, the defense asked Officer Johnson if there was video equipment in the scout car, and Johnson replied in the negative. On redirect, the prosecution asked whether the lack of video equipment could be traced to the budget shortfalls stemming from the city of Detroit's bankruptcy, to which Johnson responded in the affirmative. The prosecution also asked whether the lack of other accessories, such as body armor and bulletproof vests, could likewise be traced to the budgetary shortfalls. The defense objected, but the court overruled the objection on the grounds that the defendant had "opened the door" to the evidence on cross examination. A probation officer testified to Fonville's 2008 conviction and his probation conditions at the time of his release in 2013. Fonville did not take the stand.

There were comments at trial regarding Fonville's refusal to answer certain questions from the DEA officers. Although Fonville's counsel did not object to the comments, the judge provided a curative instruction to jury. The judge obtained approval of both counsel prior to delivering the instruction.

The jury found Fonville guilty of possession with intent to distribute more than twenty-eight grams of crack cocaine base. The court, at a later sentencing hearing, sentenced Fonville to ninety-seven months' imprisonment. Although the defendant requested a reduction in his

sentence level based on an acceptance of responsibility for the crime, the court denied the request, saying that Fonville's case was not the "rare case" contemplated by the note to the applicable Guidelines provision.

Fonville filed a motion in this court to remand the case in order to enlarge the record to include a letter indicating that the child-support case was closed at the time of Fonville's arrest. This court denied the motion. Fonville then filed in the district court a motion for an indicative ruling while the appeal was pending. The district court first construed that filing as a motion for a new trial based on ineffective assistance of counsel and denied it. The court also declined to enlarge the record to include the letter, saying that Fonville "had an adequate opportunity to present his argument and the letter while litigating his motion to suppress."

Fonville appeals and argues that the trial comments on his silence violated his Fifth Amendment rights; that his trial counsel's failure to object to the comments constituted ineffective assistance of counsel; that the court's cautionary instruction regarding those comments was insufficient; that he was detained longer than allowed under the Fourth Amendment before the K-9 unit arrived for the search; and that the court erred by declining to enlarge the record to include the letter relating to his arrest warrant. He further challenges the admission of four pieces of evidence. Finally, Fonville argues that the court should have decreased his sentence because he accepted responsibility for the crime. None of these arguments has merit.

## I.

Fonville's Fourth Amendment arguments are without merit. First, Fonville's arrest was justified by the outstanding warrant. When the officers permissibly pulled Fonville over for the traffic violation, he informed them that there was a warrant for his arrest. This confirmed what

the officers found in their database. Fonville's counsel agreed that the warrant was valid at the hearing on the motion to suppress. These facts support the warrant's validity. Fonville now argues that the officers acted recklessly in relying on an invalid warrant when they had been investigating him for months. Fonville argues that "[s]ince the police had time to verify the validity of the warrant, it was reckless of them to rely on it." However, Fonville cites no authority for this argument other than *United States v. Herring*, 555 U.S. 135 (2009). *Herring* is unpersuasive here for multiple reasons. The foremost reason is because *Herring* does not stand for a general duty to investigate the validity of warrants in police databases. Additionally, even if the facts were similar to *Herring* and the DEA agents here committed a violation, Fonville has pointed to no real evidence of recklessness in reliance on a warrant that was in the database and confirmed by Fonville when stopped. Fonville also cites a friend-of-the-court letter to support his argument regarding the warrant's invalidity. The letter's absence from the record below, however, means that we will not consider it. *See United States v. Bonds*, 12 F.3d 540, 552 (6th Cir. 1993). There was thus no error in the district court's treatment of the warrant.

Given that Fonville's arrest was valid, there was no problem with the period of time that passed before the K-9 unit arrived to execute a sniff of the Durango. Fonville argues that the fifteen to thirty minutes between his arrest and the arrival of the K-9 unit rose to the level of a constitutional violation under *Rodriguez v. United States*, 135 S. Ct. 1609 (2015). *Rodriguez* is inapposite. In that case, the Supreme Court held that the police cannot extend an otherwise lawful traffic stop, absent reasonable suspicion, in order to conduct a dog sniff. *Id.* at 1615. In the present case, however, Fonville was under arrest and consented to the search of his vehicle. Being under arrest differs in significant constitutional ways from undergoing a simple traffic stop. *See Knowles v. Iowa*, 525 U.S. 113, 117, 119 (1998). *Rodriguez* focused on the short

duration of a traffic stop as opposed to when someone is under arrest, and it is thus distinguishable. There is no such time limit on detention for a dog sniff following a lawful arrest. Fonville's detention argument is thus without merit.

**II.**

Fonville's Sixth Amendment argument is also without merit. The references in court to Fonville's refusal to answer questions, subject to an immediate curative instruction, did not require a mistrial. A DEA agent testified at trial that Fonville refused to provide answers to certain questions. Fonville's attorney did not object to this testimony. Nonetheless, the judge believed that a cautionary instruction was necessary to correct any possible constitutional problems that might have arisen from the comments. After obtaining the approval of both counsel, the district court judge read the following instruction to the jury:

> You heard testimony here from the agent indicating that the defendant agreed to answer questions at the request of [the DEA agent]. And you heard also that in the course of that conversation, which the defendant agreed to conduct, there were [a] few questions that the defendant declined to answer.
>
> I do instruct you that a person in this defendant's position is not required to answer each and every question that's put to him in a case such as this, even if he agrees, in other words, to speak about some of the events in question. So you must not draw any adverse conclusion from the mere fact that the defendant declined to answer some question or another. Just take what was presented and what was said, according to the way you determine it to have been proven . . . or not, and focus on that and not about what was not said.

During closing arguments, the prosecution stated that Fonville "didn't implicate anyone else" after he was arrested. The agent's comment and the prosecutor's comment during closing were the only mentions of Fonville's reluctance to talk about some issues with his arresting officers. We review only for plain error because Fonville's counsel never objected to these references, and this argument is being made for the first time on appeal. *See United States v. Hynes*, 467 F.3d 951, 957–58 (6th Cir. 2006).

First, it is questionable whether there was any error in this case. As the government argues, the prosecutor's comment during closing was not pre-planned and was offered to rebut the theory that it was not believable that Fonville made any admissions when the officers questioned him. Furthermore, even Fonville's trial counsel thought that there was no error.

The court's decision to give a curative instruction, rather than declare a mistrial, was not an abuse of discretion. A court reviewing a trial court's decision regarding a mistrial must accord "great deference" to the trial court and "must be satisfied that the trial judge did not act irrationally or irresponsibly, but exercised sound discretion." *Ross v. Petro*, 515 F.3d 653, 661 (6th Cir. 2008) (internal quotation marks omitted) (quoting *Arizona v. Washington*, 434 U.S. 497, 511–14, 514 (1978)). Furthermore, not every case containing comments on a defendant's Fifth Amendment right to remain silent warrants a mistrial or, on review, a new trial. *See United States v. Ursery*, 109 F.3d 1129, 1134–36 (6th Cir. 1997). The court exercised its discretion to provide a curative instruction rather than declare a mistrial. Other than arguing about the general harmfulness of comments on a defendant's silence, Fonville has not shown on appeal that a manifest necessity for mistrial existed. The court's curative instruction was quite thorough and clearly instructed the jury to disregard the comments on silence. Fonville therefore has not shown that the district court here abused its discretion by declining to grant a mistrial and instead choosing to deliver the curative instruction.[2]

Even assuming that the court erred in its treatment of the references, any error was harmless. Fonville's silence had nothing to do with whether he possessed the crack cocaine; his silence and the corresponding comments at trial concerned only his refusal to incriminate others.

---

[2] Fonville argues that his trial counsel's failure to object during the trial and closing argument rose to the level of ineffective assistance. However, ineffective-assistance claims are best left to collateral review under 28 U.S.C. § 2255, after the parties are able to develop an adequate record. *See United States v. Williams*, 612 F.3d 500, 508–09 (6th Cir. 2010). Because Fonville has not argued that the record is adequately developed (other than baldly saying that "the prejudice is patent"), we do not address this ineffective-assistance-of-counsel claim in this appeal.

The competent evidence was enough to establish his guilt for possession with intent to distribute the "cookie." For these same reasons, the cautionary instruction was not prejudicial to Fonville's case. There was also nothing in the instruction that was confusing or misleading—the judge clearly described that Fonville's silence in response to certain questions could not be considered by the jury. Because the references and curative instructions did not pertain to the crime of possession, any possible error from the references to Fonville's silence and the curative instruction was harmless.

Finally, Fonville challenges the curative instruction as independently erroneous. Fonville's counsel agreed to the court's curative instruction. "[A]n attorney cannot agree in open court with a judge's proposed course of conduct and then charge the court with error in following that course." *United States v. Aparco-Centeno*, 280 F.3d 1084, 1088 (6th Cir. 2002) (citation omitted).

## III.

Fonville's evidentiary arguments are also meritless. Fonville argues that the testimony about his recent release from prison, his probation, the warrant for failure to pay child support, and the budget problems in Detroit were either attacks on his character or were unfairly prejudicial. These arguments do not warrant reversal. The recent release from prison and probation were admissible to show that Fonville had the motive to sell the cocaine—indeed, Fonville told the officers that he "just got[] out of jail and . . . needed to get back up on his feet." A reference to prison or incarceration does not automatically render evidence excluded as prejudicial. *See United States v. McConer*, 530 F.3d 484, 498–99 (6th Cir. 2008). Further, the court did not err in admitting evidence of the reasons for Fonville's outstanding warrant. Although Fonville argues that "[a] deadbeat dad is not someone who is lionized," the admission

of the fact that the warrant was for non-support was, as the trial court permissibly determined, part of the "background" of Fonville's police encounter. Courts have held that evidence "complet[ing] the story of the charged offense" is admissible background evidence. *United States v. Pritchett*, 749 F.3d 417, 432 (6th Cir. 2014) (internal quotation marks omitted) (quoting *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000)). The district court also did not abuse its discretion in ruling that the defense "opened the door" to the testimony about police budget issues in Detroit. Fonville admits that "[o]nly evidence to rebut or explain the absence of . . . corroborative evidence was admissible." The budgetary issues were introduced to explain why the officers had no body cameras or microphones to record and corroborate Fonville's interaction with the police. This evidence easily passed through the door that Fonville opened. Fonville's arguments regarding the improper admission of evidence are therefore wanting.

## IV.

Fonville's one sentencing contention is without merit. The district court did not clearly err in declining a two-level decrease in his criminal-offense level for acceptance of responsibility. Fonville argues that he went to trial only to preserve his constitutional challenge and indeed accepted responsibility, but the record does not support that argument. Fonville put the government to its burden of proof at trial. The trial transcript shows that Fonville sought to discredit the officers' testimony as lacking in corroborative evidence due to a lack of any recording devices. "[A]n adjustment for accepting responsibility is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." *United States v. Williams*, 940 F.2d 176, 182 (6th Cir. 1991). Because Fonville attempted to undermine the

officers' credibility and therefore put the government to its burden of proof, the district court's

declining to administer a two-level decrease was not clearly erroneous.

The guilty verdict and sentence are accordingly affirmed.