NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0216n.06

No. 18-5769

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| KEVIN LABRICIO FRAZIER, | ) | EASTERN DISTRICT OF KENTUCKY |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

FILED
Apr 25, 2019
DEBORAH S. HUNT, Clerk

BEFORE: DAUGHTREY, COOK, and GRIFFIN, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge. Defendant Kevin Labricio Frazier appeals his conviction for assault resulting in serious bodily injury and the resulting 115-month prison sentence. Before this court, he contends that the evidence adduced at trial was insufficient to support his conviction, that the district court erred in sentencing him as a career offender, and that the district court improperly increased his base offense level by two levels for obstruction of justice and by five levels for inflicting serious bodily injury upon the victim of the assault. We find no merit to these challenges and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

While incarcerated at a federal correctional institution—Federal Medical Center-Lexington (FMC-Lexington)—Kevin Frazier and Jordan Hughes developed a friendship that evolved into an intimate, sexual relationship. On November 24, 2017, however, corrections officers observed

Frazier, unprovoked, place Hughes in a headlock and punch him repeatedly in the head and face.[1] As a corrections officer approached the two men with a canister of pepper spray, Frazier backed away from Hughes, and the two prisoners were separated and handcuffed. By that time, a physician assistant from the facility's medical staff responded, and she and a corrections officer saw Hughes lose consciousness and lowered him to the floor. After no more than approximately 15 seconds, however, Hughes regained consciousness, and he was taken by gurney to the facility's medical clinic for further evaluation.

The physician assistant noted that although Hughes appeared responsive, had no issues with breathing, and did not complain of chest pain, he was bleeding profusely from a laceration under his right eye, his right eye was swollen shut, and he winced in pain when touched along his nose and below his eye. When asked to rate the severity of his pain on a scale of one to ten, with ten "being the worst pain that you can imagine," Hughes "indicated that he had a pain level of 7 of 10." "[B]ecause [Hughes had] passed out, and he was complaining of pain to his head, neck, [and] had significant swelling in his face," the physician assistant "believe[d] that he needed to be sent to the outside hospital." Consequently, Hughes was transferred to the University of Kentucky Hospital for further treatment.

While at the hospital, Hughes underwent a CAT scan that revealed a fracture of the orbital bone around his right eye, as well as a second facial fracture. Hughes also received five stitches to close the facial laceration, and because he described his pain at that point as "excruciating," he was given a morphine shot and two hydrocodone tablets. A plastic surgeon at the hospital also recommended that reconstructive surgery be performed the following week to rectify the structural damage to Hughes's face. Hughes then was returned to FMC-Lexington later that same day.

---

[1] One of the corrections officers estimated that he witnessed Frazier punch Hughes eight times, while Hughes testified that he was hit 30–40 times.

Once back at the prison, Hughes was given a dose-pack of Tylenol to supplement his existing Tylenol prescription in an effort to alleviate the pain associated with his injuries. Moreover, because Hughes's right eye remained swollen shut for a week, one of the physician assistants at the prison ordered an extra blanket for Hughes to use to elevate his head while sleeping to decrease swelling "and hopefully decrease pain."

Although medical personnel at the prison requested that Hughes receive the recommended reconstructive surgery on December 8, Hughes did not return to the University of Kentucky Hospital for follow-up until December 21, 2017. At that time, the surgeon noted that the orbital bone already had begun to heal, meaning that the bone would have to be rebroken to perform the surgery. Hughes declined to undergo such a procedure.

Hughes claimed that as a result of the beating, "it feels like my sinus is clogged up on the right side of my face," and there is "more pressure on [that] side of my face." He also now has a scar under his right eye, and the right side of his face protrudes "a little farther" than does the left side.

A federal grand jury ultimately indicted Frazier for an assault resulting in serious bodily injury. At the subsequent jury trial, defense counsel strategically did not dispute the fact that Frazier had assaulted Hughes. Instead, the defense argued only that Hughes did not suffer "*serious bodily injury,*" as that term is defined in 18 U.S.C. § 1365(h)(3) (emphasis added). The jury disagreed, however, and after deliberating for 55 minutes, returned a guilty verdict on the only count in the indictment.

At sentencing, the district judge ruled that Frazier's base offense level of 14 should be increased five levels because of the serious bodily injury suffered by the victim, and by two additional levels due to Frazier's attempt to obstruct justice by having acquaintances contact

Hughes and encourage him to testify that he (Hughes) actually instigated the fight that resulted in him being injured. Nevertheless, because the district court determined that Frazier's prior criminal record justified classifying the defendant as a career offender, the district judge assigned Frazier an offense level of 24, which, with a criminal history category of VI, resulted in a sentence of 115 months. Frazier now challenges the validity of his conviction and the appropriateness of his sentence.

## DISCUSSION

**Sufficiency of the Evidence**

Frazier contends that the evidence adduced by the government is insufficient to support his conviction for assault resulting in serious bodily injury. When challenging the legal sufficiency of the evidence to support a guilty verdict, however, a defendant bears a "heavy burden." *United States v. Pritchett*, 749 F.3d 417, 431 (6th Cir. 2014) (citation omitted). On an appeal from a jury verdict of guilt, we ask simply "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Moreover, "[w]e do not insert our own findings of fact; rather, we give full credit to the responsibility of the jury to weigh the evidence, to make credibility determinations, and to draw inferences." *United States v. Washington*, 715 F.3d 975, 979 (6th Cir. 2013) (citing *Jackson*, 443 U.S. at 319).

The provisions of 18 U.S.C. § 113(a)(6) criminalize assaults resulting in serious bodily injury if such assaults occur "within the special maritime and territorial jurisdiction of the United States." As at trial, on appeal Frazier does not contest the fact that he assaulted Hughes or the fact that the assault occurred in a federal correctional institution. Instead, he argues only that Hughes did not suffer "serious bodily injury" as a result of the attack.

The term "serious bodily injury" is defined as "bodily injury which involves—(A) a substantial risk of death; (B) extreme physical pain; (C) protracted and obvious disfigurement; or (D) protracted loss or impairment of the function of a bodily member, organ, or mental faculty." 18 U.S.C. § 1365(h)(3). Here, Hughes testified that, as a result of the assault by Frazier, he lost consciousness for a short period of time and suffered two broken bones around his eye and a severe laceration that required stitches. Moreover, he claimed that his right eye was swollen shut for a full week and that he was in "excruciating" pain after the attack such that, during his hospitalization, medical personnel administered a morphine shot, two hydrocodone tablets, and prescribed a supplemental Tylenol dose-pack.

Frazier argues, however, that Hughes spent only about ten hours in the hospital and that there was no testimony at trial that Hughes's pain persisted for an excessively long period of time. Nevertheless, the statutory definition of "serious bodily injury" does not mandate that the government prove that the victim of an assault suffered interminable pain or required a lengthy hospital stay. The jury in this case concluded that Hughes experienced "extreme physical pain" and that the weeklong loss of vision in his swollen right eye amounted to a protracted "impairment of the function of a bodily member [or] organ." 18 U.S.C. § 1365(h)(3)(B) and (D).

In challenging those jury determinations, Frazier alleges that it is only the testimony of Hughes himself that supplies evidence of "excruciating" pain and the weeklong loss of vision. Frazier then suggests that such testimony should not be believed because Hughes is a convicted felon. As we noted previously, however, our role on appeal is not to reweigh the evidence presented at trial or second-guess the jury's credibility determinations. Frazier's challenge to the sufficiency of the evidence adduced to convict him thus is without merit.

**Sentencing Challenges**

**Career-Offender Designation**

In § 4B1.1(a), the United States Sentencing Guidelines provide:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

In addition, the Guidelines define the term "crime of violence" to mean, in pertinent part, "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that . . . has as an element the use, attempted use, or threatened use of physical force against the person of another."  U.S.S.G. § 4B1.2(a)(1).

On November 24, 2017, the date of the offense at issue in this appeal, Frazier was 30 years old and had been convicted previously of selling heroin (a controlled-substance offense) and of aiding and abetting armed bank robbery (a crime of violence).  Consequently, because the jury in this case convicted Frazier of assault resulting in serious bodily injury—a crime of violence that carries a maximum penalty of ten years, *see* 18 U.S.C. § 113(a)(6)—the district court determined that Frazier was a career offender with a offense level of 24 and a criminal history category of VI, thereby subject to a Guidelines sentencing range of 100-120 months.  U.S.S.G. § 4B1.1(b)(5); U.S.S.G. Ch. 5, Pt. A.

During the sentencing hearing before the district court, Frazier, through his counsel, withdrew a previously lodged challenge to the career-offender designation.  On appeal, however, he argues that such enhanced sentencing was improper because the evidence does not establish that his assault of Hughes resulted in *serious* bodily injury.  Thus, Frazier contends, he is guilty of

nothing more than simple assault, which he maintains cannot be considered a crime of violence that would justify application of the career-offender provisions of the Guidelines.

Even presuming that he may challenge the district court's career-offender designation after previously acquiescing to the propriety of such a ruling, Frazier cannot obtain the relief he seeks on this issue. As set out in the discussion regarding Frazier's challenge to the sufficiency of the convicting evidence, the trial testimony detailed the injuries and pain suffered by Hughes as a result of Frazier's assault. In crediting the testimony of the prosecution's witnesses, the jury was justified in finding, beyond a reasonable doubt, that Frazier was guilty of a crime of violence—an assault resulting in serious bodily injury. The challenge to the career-offender determination thus also is without merit.

### Other Offense-Level Enhancements

Frazier also challenges on appeal the district court's decision to increase the base offense level of his sentence for obstruction of justice, *see* U.S.S.G. § 3C1.1, and for infliction of serious bodily injury upon the victim, *see* U.S.S.G. § 2A2.2(b)(3)(B). Because we have determined that the district court's career-offender designation was proper, Frazier's additional challenges to his sentence are moot.

The base offense level for the crime for which Frazier was convicted is 14. U.S.S.G. § 2A2.2(a). Even with a two-point enhancement for obstruction of justice and a five-point enhancement for infliction of serious bodily injury, that offense level would have increased only to 21. However, the career-offender provisions of U.S.S.G. § 4B1.1(b)(5) call for Frazier's offense level to be set at 24, regardless of whether application of other Guidelines provisions would have resulted in an offense level of 21 (base offense level 14, plus a 2-level enhancement for obstruction of justice, plus a 5-level enhancement for serious bodily injury), 19 (base offense level 14, plus a

5-level enhancement for serious bodily injury, but no obstruction-of-justice enhancement), 16 (base offense level 14, plus a 2-level enhancement for obstruction of justice, but no serious-bodily-injury enhancement), or 14 (base offense level without additional enhancements). Thus, we need not address the remaining sentencing issues raised by Frazier on appeal.

## CONCLUSION

The evidence adduced at trial was sufficient to justify the jury's determination of guilt beyond a reasonable doubt. Moreover, the district court did not err in designating Frazier a career offender and sentencing him to a presumptively reasonable within-Guidelines sentence. We thus AFFIRM the judgment of the district court in its entirety.